Michael **BRADLEY**, Respondent,

v.

**VIC'S WELDING and Western Insurance Company, Relators.**

No. C7–86–2163.

Supreme Court of Minnesota.

May 8, 1987.

Rolf E. Sonnesyn, Relator, Foster, Waldeck & Lind, Ltd., Minneapolis, for relators.

Curtis H. Foster, Starr & Foster, Minneapolis, for respondent.

**COYNE, Justice.**

The sole issue in this case is the compensation rate for temporary total and temporary partial disability under Minn.Stat. § 176.011, subd. 18. Employee, a heavy equipment operator hired for a short term job, claims entitlement to periodic compensation based on a weekly wage which includes overtime. The Workers' Compensation Court of Appeals (WCCA), by a majority decision, included overtime in the computation of the weekly wage, overturning a compensation judge's determination that the employee's weekly wage should be based on a 40–hour week. We reverse and reinstate the decision of the compensation judge.

Employer, Vic's Welding, maintains the boilers, vessels, and exchangers and performs other maintenance work at the Pine Bend Refinery. Each fall the refinery shuts down for a three-week "turn-around" period during which Vic's Welding overhauls the plant equipment and performs any other necessary maintenance work. During the "turn-around" employer maintained two 10–hour shifts seven days a week and augmented its customary workforce of 30–50 employees by approximately 200 workers hired out of various trade union halls. On completion of the refinery turn-around, employer resumed its regular 40–hour work week and returned to its normal complement of workers.

On September 26, 1983, employer hired employee to operate a crane at the refinery for the turn-around period. During employee's first week of employment with employer, he earned $1,215.50, which comprised $680 of regular wages (40 hours at $17 per hour) and $535.50 of overtime pay. The second week employee's gross earnings were $1,275, $680 of regular wages and $595 of overtime pay. During the third week, employee sustained a work-related back injury and was unable to continue working. Employer and its insurer paid workers' compensation benefits based on a weekly wage of $680 computed on a 40–hour week at $17 per hour.

After completing his college education, for part of which the employer paid as retraining benefits, employee obtained employment as a pharmaceutical salesperson at an annual salary of $26,000. Employer continued to pay temporary partial disability compensation based on a weekly wage of $680. Employee contends, however, that his weekly wage should include overtime. He asserts that the majority of his jobs as an operator of heavy construction equipment involved considerable overtime, but he concedes that his employment was irregular and generally seasonal and that his gross income from that kind of work was not more than $20,000.

The compensation judge found that overtime was not regular or frequent throughout the year for employees of this employ-

er and that the employer had correctly computed the weekly wage without considering overtime. The WCCA reversed and declared that overtime should be included in computing the weekly wage and found that the employee's weekly wage was $1,215.50. The question is now before us on certiorari.

■■■ While we do not disturb a decision of the WCCA unless it is manifestly contrary to the evidence, a decision which rests upon the application of a statute to basically undisputed facts involves a conclusion of law which is not binding on this court. *Cf. A.J. Chromy Constr. Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977). The majority of the WCCA looked upon the compensation judge's decision as one of misapplication of the statute and, hence, subject to correction. To the extent, however, that the compensation judge's decision depends on his findings that the employer's normal work week is a five day, 40–hour week and that overtime was neither regular nor frequent throughout the year, those factual determinations—for which there is substantial evidentiary support—are entitled to deference by the WCCA. *Polaschek v. Asbestos Products, Inc.*, 361 N.W.2d 37 (Minn.1985).

Minn.Stat. § 176.011, subd. 18 (1982) provides in relevant part:

"Weekly wage" is arrived at by multiplying the daily wage by the number of days and fractional days normally worked in the business of the employer for the employment involved. * * * Occasional overtime is not to be considered in computing the weekly wage, but if overtime is regular or frequent throughout the year it should be taken into consideration.

The term "daily wage" means the daily wage of the employee in the employment engaged in at the time of the injury. In the case of construction workers, the weekly wage may not be less than five times the daily wage. Minn.Stat. § 176.011, subd. 3.[1]

■■ In applying these statutes to this case, the compensation judge determined, as do we, that because overtime was not regular or frequent throughout the year in employer's business, employee's weekly wage was to be based on employer's standard 40–hour work week. The WCCA majority, however, determined that the employee was not a regular employee of employer, but rather that he was hired for a specialized job at a wage that included regular overtime. Thus, reasoned the WCCA majority, employee's temporary total and temporary partial disability compensation was to be based upon employee's actual earnings during his two and one-half weeks with employer.

The object of wage determination is to "arrive at a fair approximation of [the employee's] probable future earning power which has been impaired or destroyed be-

1. Minn.Stat. § 176.011, subd. 3 (1982) provides:

Daily wage. "Daily wage" means the daily wage of the employee in the employment in which he was engaged at the time of injury but does not include tips and gratuities paid directly to an employee by a customer of the employer and not accounted for by the employee to the employer. If the amount of the daily wage received or to be received by the employee in the employment in which he was engaged at the time of injury was irregular or difficult to determine, or if the employment was part time, the daily wage shall be computed by dividing the total amount the employee actually earned in such employment in the last 26 weeks, by the total number of days in which the employee actually performed any of the duties of such employment, provided further, that in the case of the construction industry, mining industry, or other industry where the hours of work are affected by seasonal conditions, the weekly wage shall not be less than five times the daily wage. Where board or allowances other than tips and gratuities are made to an employee in addition to wages as a part of the wage contract they are deemed a part of his earnings and computed at their value to the employee. In the cases of persons performing services for municipal corporations in the case of emergency, then the normal working day shall be considered and computed as eight hours, and in cases where such services are performed gratis or without fixed compensation the daily wage of the person injured shall, for the purpose of calculating compensation payable under this chapter, be taken to be the usual going wage paid for similar services in municipalities where such services are performed by paid employees. If, at the time of injury, the employee was regularly employed by two or more employers, the employee's earnings in all such employments shall be included in the computation of daily wage.

cause of the injury." *Knotz v. Viking Carpet*, 361 N.W.2d 872, 874 (Minn.1985), quoting *Sawczuk v. Special School Dist. No. 1*, 312 N.W.2d 435, 437–38 (Minn.1981). While the computation of weekly wage is frequently based upon actual wages, there are various circumstances which make the claimant's actual earnings during a particular period an unreliable measure of his future earning power. As Professor Larson has stated, "sometimes it is as important to reject as it is to accept a brief recent-wage experience, if a realistic approximation of future wage loss is to be obtained." 2 A. Larson, The Law of Workers' Compensation § 60.21(c) (1987).

Inclusion of overtime in the computation of the weekly wage does not realistically reflect employee's future wage loss either as a regular crane operator employed in the employer's business or as a crane operator hired out of the union hall for short term jobs. *Cf. Rath v. Perlman Rocque Co.*, 384 N.W.2d 464 (Minn.1986). Employee's eight-year work history as a heavy equipment operator consisted primarily of many seasonal jobs of short duration, from which he never earned more than $20,000 per year. The average weekly wage calculated by the WCCA represents an annual income of $63,206, more than three times the amount employee actually earned. Although the compensation judge's finding that employee's weekly wage was $680 contemplates an annual income substantially greater than employee's, that finding comports with the statute and fairly compensates the employee for the diminution in his earning capacity as a result of his work-related injury.

Reversed and decision of compensation judge reinstated.